# EXHIBIT B



# TERMS OF REFERENCE TO ARBITRATION AND TERMS OF APPOINTMENT OF ARBITRAL TRIBUNAL

1. **The Parties**

   The Claimant is Walter Bau AG (in liquidation)

   The Respondent is The Kingdom of Thailand

2. **Representation**

   The Claimant is represented by Mr Robert Hunter and Dr. Sabine Konrad, of

   Lovells,
   Untermainanlage 1,
   60329 Frankfurt am Main, Germany
   Tel:  +49 69 96 236-0 (Switchboard) (Direct dial: 283 Mr. Hunter, -286 Dr. Konrad)
   Fax:  +49 69 96 236-100
   Email: robert.hunter@lovells.com

   The Respondent is represented by Mr Michael Polkinghorne and Mr. Leon Ioannou of

   White & Case,
   11 Boulevard de la Madeleine
   75001 Paris, France
   Tel:  +33 1 55 04 15 15
   Fax:  +33 1 55 04 15 16
   Email: mpolkinghorne@whitecase.com, lioannou@whitecase.com

3. 
   (a) The Arbitral Tribunal ("the Tribunal") is composed of the Honourable Sir Ian Barker, QC (Chair), The Honourable Marc Lalonde, P.C. O.C. Q.C. and Dr Suvarn Valaisathien;

   (b) The Arbitral Tribunal has been validly established in accordance with Articles 9 and 10 of a Bilateral Investment Treaty ("BIT") between the Federal Republic of Germany and the Kingdom of Thailand for the Encouragement and Reciprocal Protection of Investments made on 24 June 2002; ("The Treaty")

   (c) The contact details of the Arbitral Tribunal are:

   The Hon. Sir Ian Barker (Presiding Arbitrator)

   | Courier Address: | Postal Address: |
   |---|---|
   | Bankside Chambers | PO Box 28 203 |
   | Level 22, Lumley Centre | Auckland 5 |
   | 88 Shortland Street | New Zealand |
   | Auckland, New Zealand | |
   | Ph:  +649 309 6106 *(Chambers)* | +649 520 1972 (Home) |
   | Fax: +649 309 6160 *(Chambers)* | +649 520 4468 (Home) |
   | Email: ian.barker@xtra.co.nz | renee@alexanderassoc.co.nz |

---

Terms of Reference and Terms of Appointment of Arbitral Tribunal

The Hon. Marc Lalonde

Stikeman Elliott LLP
1155 René-Levesque Boulevard, Suite 4000
Montréal, QC. H3B 3V2
Canada

Ph:   +1 514 397 3080
Fax:  +1 514 397.3222

Email:   mlalonde@stikeman.com


Dr Suvarn Valaisathien

63 Soi 8 (Soi Preeda)
Sukhumvit Road,
Bangkok 10110
Thailand

Ph:   +66 2255 2550-1
Fax:  +66 2653 1135

Email:   suvarny@ji-net.com

- (d) Each arbitrator shall be and shall remain impartial and independent of the Parties.

- (e) The Parties waive any possible objection to the appointment of the arbitrators on the grounds of potential conflict of interest and/or lack of independence or impartiality in respect of matters known to them at the date of signature of these Terms of Appointment.

4. **Scope of Arbitration**

   The Tribunal may consider such objections to jurisdiction, claims and/or counterclaims that either party may seek to bring and which arise in any way under the provisions of the Treaty or the BIT between the Federal Republic of Germany and the Kingdom of Thailand made on 13 December 1961 ("The 1961 Treaty"). The Respondent has reserved its right to contest Claimant's reliance on the 1961 Treaty. Objections to jurisdiction, claims and counterclaims shall be more particularly articulated in such manner as the Tribunal may prescribe.

5. **Place of Arbitration**

   The juridical seat of the arbitration is fixed by the Tribunal as Geneva, Switzerland.

6. **Place of Hearing of Arbitration**

   The place for any oral hearings shall be Kuala Lumpur, Malaysia, or such other place or places as the Tribunal shall determine in consultation with the parties.

---

Terms of Reference and Terms of Appointment of Arbitral Tribunal





7. **Applicable Law of Arbitration**

The applicable law shall be public international law. Subject to this, where discrete issues of national law arise, the law to be applied (or considered) shall ordinarily be the law of the Kingdom of Thailand although German law issues may also arise. The Tribunal shall determine the appropriate law or laws to be applied.

8. **Language of the Arbitration**

The language of the arbitration shall be English. Any documents in any other language which may at any time be presented to the Tribunal, shall be accompanied by a translation into English, such translation to be certified by a properly-qualified interpreter. The Tribunal may make such orders as may be just in relation to the translation of any documents produced or discovered by either party. Without limiting the discretion of the Tribunal, it may make orders:

(a) requiring the translation into English of any document;

(b) dispensing with such translation of any document;

(c) requiring any translation to be certified by a properly qualified translator; and

(d) dispensing with the need for certification of any translation.

9. **Witnesses**

Witnesses may be permitted to testify in a language other than English, such testimony to be translated by a properly-qualified interpreter provided by the Party adducing such witness testimony.

10. **Discovery**

The parties shall exercise reasonable discretion in any request for discovery and/or inspection of documents. All such requests shall be made with the provisions of the Procedural Timetable in mind and shall not delay or impede due implementation of the Timetable. The Tribunal shall at all times have the discretion to make such orders as may be just relating to discovery and/or inspection of documents.

11. **Tribunal's Immunity from Suit**

(a) The Parties shall not seek to make any arbitrator liable in respect of any act or omission in connection with any matter related to the arbitration, save where the arbitrator is shown to have been guilty of conscious and deliberate wrongdoing.

(b) (1) No Party will require a member of the Arbitral Tribunal to be a party in any judicial or any other proceedings arising out of the arbitration.

(2) The deliberations of the Tribunal shall take place in private and remain secret. None of the parties will require a member of the Arbitral Tribunal to be a witness and give evidence about the deliberations of the Arbitral Tribunal in any judicial or any other proceedings arising out of the arbitration.

---

Terms of Reference and Terms of Appointment of Arbitral Tribunal

12. **Remuneration of Tribunal**

    (a) The parties shall contribute equally to a fund of $US 600,000 to be held by the LCIA as stakeholder as provided in Article 13 below. This fund shall be used as the primary source for the remuneration of the Tribunal in the proportion of 40% to the Presiding Arbitrator and 30% to each co-arbitrator. The parties shall pay their respective shares by 15 August 2006

    (b) The parties shall contribute equally to a further fund of $US 100,000 for the expenses of the Tribunal calculated as per Article 12(h) below.

    (c) The remuneration of the Tribunal shall be paid out of the fund by the stakeholder to the members of the Tribunal in the proportions referred in paragraph (a) above at the following points:

        (i) 40% of the fund on 14 January 2007

        (ii) 30% of the fund one month before the date fixed for the hearing on the merits of the arbitration

        (iii) 30% of the fund one month after the conclusion of any hearing on the merits.

    (d) The Tribunal may request further advances on fees after consultation with parties should circumstances make it appear proper to the Tribunal to so request.

    (e) Should the arbitration terminate for any reason after the first payment referred to in para. (c) above, the Tribunal shall make such order as to disposition of the balance of the amount held by the stakeholder for fees and expenses as seems on the judgment of the Tribunal to be just and equitable.

    (f) The stakeholder shall make payment to members of the Tribunal of such sums and at such times as the Presiding Arbitrator shall specify without the stakeholder having to enquire whether such payments are properly made. The Presiding Arbitrator shall endeavour to notify the Parties as and when such payments are made.

    (g) The Presiding Arbitrator may appoint an administrative secretary at a cost of not more than $NZ 150 per hour. The purpose of such an appointment is to reduce the costs of the Presiding Arbitrator involved in carrying out purely administrative tasks.

    (h) Each arbitrator shall be reimbursed in respect of all disbursements and charges reasonably incurred in connection with the arbitration (including but not limited to travel and accommodation expenses, telephone, fax, delivery, and copying) on the same basis as that from time to time approved by the ICC Paris for travel and other expenses of ICC arbitrators.

    (i) Each arbitrator may bill for reimbursement of disbursements as and when they are incurred.

    (j) Expenses relating to the administrative secretary engaged for the purposes of the arbitration shall be disbursed directly from the deposits referred to in paragraph (b) above as and when they are incurred.

---

Terms of Reference and Terms of Appointment of Arbitral Tribunal

(k) If the arbitration is settled or abandoned without an award being made, or an arbitrator resigns or dies, he or his estate shall be entitled to payment for work done and expenses incurred to date.

(l) The Parties are jointly and severally liable for any fees reasonably incurred irrespective of who appointed whom.

(m) Amounts paid to the arbitrators do not include any possible value added taxes (VAT) or other taxes or charges and imposts applicable to the arbitrators' fees. Parties have a duty to pay any such taxes or charges; however, the recovery of any such charges or taxes is a matter solely between the arbitrators and the parties.

(n) Expenses relating to any hearing are outside the scope of the expenses covered by this Article. Such expenses, including room hire and recording services shall be shared equally by the parties, subject to any final determination by the Tribunal regarding costs.

13. **Advance on costs**

(a) Pursuant to Article 12 above, the Parties shall establish an initial deposit of $US 350,000 (from each Party). Unless otherwise designated by the Tribunal, the deposit shall be placed in an interest bearing account, maintained and supervised by the London Court of International Arbitration ("The stakeholder").

(b) The Presiding Arbitrator may from time to time require the Parties pursuant to Article 41.2 of the UNCITRAL Rules and pursuant to Article 12 hereof to make supplementary deposits in order to maintain an appropriate balance.

(c) Interest shall accrue on the account for the benefit of the Parties.

(d) Funds should be lodged in United States dollars with the LCIA account at HSBC Bank, St. Clement Danes, 194 The Strand, London WC2R 1DX.

(e) The Arbitral Tribunal shall not proceed with the arbitration without ascertaining at all times from the Registrar or any Deputy Registrar that the LCIA is in requisite funds.

(f) In the event that a party fails or refuses to provide any deposit as directed by the Arbitral Tribunal, the Tribunal may direct the other party or parties to effect a substitute payment to allow the arbitration to proceed (subject to any award on costs). In such circumstances, the party paying the substitute payment shall be entitled to recover that amount as a debt immediately due from the defaulting party.

(g) Failure by the Claimant or the Respondent to provide promptly and in full the required deposit may be treated by the Arbitral Tribunal as a withdrawal of the claim or counterclaim respectively.

(h) The unused balance held on deposit at the end of the arbitration shall be returned to one or both Parties as directed by the Tribunal.

14. **Procedure**

(a) Subject to any provisions contained in the legislation in force at the seat of the arbitration, the procedural rules applicable to this arbitration shall be those contained in the UNCITRAL Arbitration Rules, except as excluded, supplemented, or varied by agreement of the Parties, the relevant provisions (if any) of the Treaty, and/or such specific orders or instructions as the Tribunal may from time to time establish).

Terms of Reference and Terms of Appointment of Arbitral Tribunal

(b) The Tribunal shall not be bound by any strict rules of evidence. However, as appropriate, the Tribunal may have regard to the 1999 IBA Rules on the Taking of Evidence in International Commercial Arbitration.

(c) The arbitrators and the Parties agree that the Presiding Arbitrator may make procedural rulings alone provided that:

    (i) all correspondence is copied to the co-arbitrators;

    (ii) the Presiding Arbitrator shall be free to consult, in his discretion, with the other arbitrators or to refer significant or difficult matters to the full Tribunal for decisions; and

    (iii) the full Tribunal shall hear and determine any procedural matter if requested by either Party.

### 15. Confidentiality

(a) The arbitral proceedings, including all pleadings, documents and testamentary evidence, and the deliberations of the Tribunal and any rulings or award shall be kept confidential by the Parties and members of the Tribunal except:

    (i) as necessary for enforcement or recognition of the award;

    (ii) with the consent of all parties; or

    (iii) as required by law or as necessary to protect legitimate interests of a Party or an arbitrator.

(b) For the avoidance of doubt, it is agreed that in preparing and presenting its case no Party shall be precluded from communicating with its own prospective witnesses, experts or other sources of information or materials.

### 16. Communications

(a) After signature of these Terms of Appointment neither the Parties nor their representatives may engage in any oral or written communications with any member of the Tribunal *ex parte* in connection with the subject matter of the arbitration. Provided however, that the parties may communicate directly with the Presiding Arbitrator on procedural or administrative matters. If a party does so communicate with the Presiding Arbitrator, a copy of such communication must be given to the other party.

(b) Written pleadings, submissions, written evidence and other formal documents which are the subject of any procedural order shall normally be delivered to all members of the Tribunal by courier and, within three (3) business days following delivery by courier, by CD-ROM. Correspondence between the Parties and the Tribunal shall normally be sent by electronic mail, without any need for confirmation copies by ordinary mail.

(c) The Parties shall send copies of correspondence between them to the Tribunal only if it pertains to a matter in which the Tribunal is required to take some action, or be apprised of some relevant event.

17. <u>Signature</u>

This document may be signed in counterpart. The person signing it on behalf of a party warrants that he is authorised so to act. This document shall come into force on the date when it shall have been signed by the parties and the members of the arbitral Tribunal

---

Terms of Reference and Terms of Appointment of Arbitral Tribunal 

04-SEP-2006 14:37                                                                                            P.06

Signed:

_____                          *Chayanard. K*
Claimant                                           Respondent: Director General of Department of
                                                               Highways Ministry of Transport

Place and date of signature:                       Place and date of signature


_____                          *Michel B*
                                                   Respondent:

                                                   Place and date of signature

                                                   Paris 4 September 2006


_____                          _____
Co-Arbitrator                                      Co-Arbitrator

Place and date of signature :                      Place and date of signature

_____                          _____


                            _____
                            Presiding Arbitrator
Place and date of signature:

_____


_____
Terms of Reference and Terms of Appointment of Arbitral Tribunal

# TERMS OF REFERENCE TO ARBITRATION
# AND TERMS OF APPOINTMENT OF ARBITRAL TRIBUNAL

1. **The Parties**

   The Claimant is Walter Bau AG (in liquidation)
   The Respondent is The Kingdom of Thailand

2. **Representation**

   The Claimant is represented by Mr Robert Hunter and Dr. Sabine Konrad, of Lovells,

   Untermainanlage 1,
   60329 Frankfurt am Main, Germany
   Tel:   +49 69 96 236-0 (Switchboard) (Direct dial: 283 Mr. Hunter, -286 Dr. Konrad)
   Fax:   +49 69 96 236-100
   Email: robert.hunter@lovells.com
          sabine.konrad@lovells.com

   The Respondent is represented by Mr Michael Polkinghorne and Mr. Leon Ioannou of White & Case,

   11 Boulevard de la Madeleine
   75001 Paris, France
   Tel:   +33 1 55 04 15 15
   Fax:   +33 1 55 04 15 16
   Email: mpolkinghorne@whitecase.com, lioannou@whitecase.com

3.
   (a) The Arbitral Tribunal ("the Tribunal") is composed of the Honourable Sir Ian Barker, QC (Chair), The Honourable Marc Lalonde, P.C. O.C. Q.C. and Dr Suvarn Valaisathien;

   (b) The Arbitral Tribunal has been validly established in accordance with Articles 9 and 10 of a Bilateral Investment Treaty ("BIT") between the Federal Republic of Germany and the Kingdom of Thailand for the Encouragement and Reciprocal Protection of Investments made on 24 June 2002; ("The Treaty").

(c) The contact details of the Arbitral Tribunal are:

**The Hon. Sir Ian Barker (Presiding Arbitrator)**

| **Courier Address:** | **Postal Address:** |
|---|---|
| Bankside Chambers | PO Box 28 203 |
| Level 22, Lumley Centre | Auckland 5 |
| 88 Shortland Street | New Zealand |
| Auckland, New Zealand | |

*Ph:* +649 309 6106 *(Chambers)*     +649 520 1972 *(Home)*
*Fax:* +649 309 6160 *(Chambers)*     +649 520 4468 *(Home)*

*Email:* ian.barker@xtra.co.nz     renee@alexanderassoc.co.nz

**The Hon. Marc Lalonde**

1155 René-Levesque Boulevard, 33rd Floor
Montréal, QC. H3B 3V2
Canada

*Ph:* +1 514 397 3080
*Fax:* +1 514 397.3222
*Email:* m_lalonde@~~sprint.ca~~
rbs.r~~~~rs.~~m~~

**Dr Suvarn Valaisathien**

63 Soi 8 (Soi Preeda)
Sukhumvit Road,
Bangkok 10110
Thailand

*Ph:* +66 2255 2550-1
*Fax:* +66 2653 1135
*Email:* suvarnv@ji-net.com

(d) Each arbitrator shall be and shall remain impartial and independent of the Parties.

(e) The Parties waive any possible objection to the appointment of the arbitrators on the grounds of potential conflict of interest and/or lack of independence or impartiality in respect of matters known to them at the date of signature of these Terms of Appointment.

4. **Scope of Arbitration**

The Tribunal may consider such objections to jurisdiction, claims and/or counterclaims that either party may seek to bring and which arise in any way under the provisions of the Treaty or the BIT between the Federal Republic of Germany and the Kingdom of Thailand made on 13 December 1961 ("The 1961 Treaty"). The Respondent has reserved its right to contest Claimant's reliance on the 1961 Treaty. All objections to jurisdiction, claims and counterclaims shall be more particularly articulated in such manner as the Tribunal may prescribe.

5. **Place of Arbitration**

The juridical seat of the arbitration is fixed by the Tribunal as Geneva, Switzerland.

6. **Place of Hearing of Arbitration**

The place for any oral hearings shall be Kuala Lumpur, Malaysia, or such other place or places as the Tribunal shall determine in consultation with the parties.

7. **Applicable Law of Arbitration**

The applicable law shall be public international law. Subject to this, where discrete issues of national law arise, the law to be applied or considered shall ordinarily be the law of the Kingdom of Thailand although German law issues may also arise. The Tribunal shall determine the appropriate law or laws to be applied.

8. **Language of the Arbitration**

The language of the arbitration shall be English. Any documents in any other language which may at any time be presented to the Tribunal, shall be accompanied by a translation into English, such translation to be certified by a properly-qualified interpreter. The Tribunal may make such orders as may be just in relation to the translation of any documents produced or discovered by either party. Without limiting the discretion of the Tribunal, it may make orders:

   (a) requiring the translation into English of any document;

   (b) dispensing with such translation of any document;

   (c) requiring any translation to be certified by a properly qualified translator; and

   (d) dispensing with the need for certification of any translation.

9. **Witnesses**

   Witnesses may be permitted to testify in a language other than English, such testimony to be translated by a properly-qualified interpreter provided by the Party adducing such witness testimony.

10. **Discovery**

    The parties shall exercise reasonable discretion in any request for discovery and/or inspection of documents. All such requests shall be made with the provisions of the Procedural Timetable in mind and shall not delay or impede due implementation of the Timetable. The Tribunal shall at all times have the discretion to make such orders as may be just relating to discovery and/or inspection of documents.

11. **Tribunal's Immunity from Suit**

    (a) The Parties shall not seek to make any arbitrator liable in respect of any act or omission in connection with any matter related to the arbitration, save where the arbitrator is shown to have been guilty of conscious and deliberate wrongdoing.

    (b) (1) No party will require a member of the Arbitral Tribunal to be a party in any judicial or any other proceedings arising out of the arbitration.

    (2) The deliberations of the Tribunal shall take place in private and remain secret. None of the parties will require a member of the Arbitral Tribunal to be a witness and give evidence about the deliberations of the Arbitral Tribunal in any judicial or any other proceedings arising out of the arbitration.

12. **Remuneration of Tribunal**

    (a) The parties shall contribute equally to a fund of $US 600,000 to be held by the LCIA as stakeholder as provided in Article 11 below. This fund shall be used as the primary source for the remuneration of the Tribunal in the proportion of 40% to the Presiding Arbitrator and 30% to each co-arbitrator. The parties shall pay their respective shares by 15 August 2006

    (b) The parties shall, by 15 August 2006, contribute equally to a further fund of $US 100,000 for the expenses of the Tribunal calculated as per Article 10(h) below.

    (c) The remuneration of the Tribunal shall be paid out of the fund by the stakeholder to the members of the Tribunal in the proportions referred in paragraph (a) above at the following points:

    (i) 40% of the fund on 14 January 2007

 (ii) 30% of the fund one month before the date fixed for the hearing on the merits of the arbitration

 (iii) 30% of the fund one month after the conclusion of any hearing on the merits.

(d) The Tribunal may request further advances on fees after consultation with parties should circumstances make it appear proper to the Tribunal to so request.

(e) Should the arbitration terminate for any reason after the first payment referred to in para (c) above, the Tribunal shall make such order as to disposition of the balance of the amount held by the stakeholder for fees and expenses as seems on the judgment of the Tribunal to be just and equitable.

(f) The stakeholder shall make payment to members of the Tribunal of such sums and at such times as the Presiding Arbitrator shall specify without the stakeholder having to enquire whether such payments are properly made. The Presiding Arbitrator shall endeavour to notify the Parties as and when such payments are made.

(g) The Presiding Arbitrator may appoint an administrative secretary at a cost of not more than $NZ 150 per hour. The purpose of such an appointment is to reduce the costs of the Presiding Arbitrator involved in carrying out purely administrative tasks.

(h) Each arbitrator shall be reimbursed in respect of all disbursements and charges reasonably incurred in connection with the arbitration (including but not limited to travel and accommodation expenses, telephone, fax, delivery, and copying) on the same basis as that from time to time approved by the ICC Paris for travel and other expenses of ICC arbitrators.

(i) Each arbitrator may bill for reimbursement of disbursements as and when they are incurred.

(j) Expenses relating to the administrative secretary engaged for the purposes of the arbitration shall be disbursed directly from the deposits referred to in paragraph (b) above as and when they are incurred.

(k) If the arbitration is settled or abandoned without an award being made, or an arbitrator resigns or dies, he or his estate shall be entitled to payment for work done and expenses incurred to date.

(l) The Parties are jointly and severally liable for any fees reasonably incurred irrespective of who appointed whom.

(m) Amounts paid to the arbitrators do not include any possible value added taxes (VAT) or other taxes or charges and imposts applicable to the arbitrators' fees. Parties have a duty to pay any such taxes or charges; however, the recovery of

any such charges or taxes is a matter solely between the arbitrators and the parties.

(n) Expenses relating to any hearing are outside the scope of the expenses covered by this Article. Such expenses, including room hire and recording services, shall be shared equally by the parties, subject to any final determination by the Tribunal regarding costs.

13. **Advance on costs**

(a) Pursuant to Article 12 above, the Parties shall establish an initial deposit of $US 350,000 (from each Party). Unless otherwise designated by the Tribunal, the deposit shall be placed in an interest bearing account, maintained and supervised by the London Court of International Arbitration ("The stakeholder").

(b) The Presiding Arbitrator may from time to time require the Parties pursuant to Article 41.2 of the UNCITRAL Rules and pursuant to Article 10 hereof to make supplementary deposits in order to maintain an appropriate balance.

(c) Interest shall accrue on the account for the benefit of the Parties.

(d) Funds should be lodged in United States dollars with the LCIA account at HSBC Bank, 194 The Strand, London WC2R 1DX. LCIA Reference 6792F.

(e) The Arbitral Tribunal shall not proceed with the arbitration without ascertaining at all times from the Registrar or any Deputy Registrar that the LCIA is in requisite funds.

(f) In the event that a party fails or refuses to provide any deposit as directed by the Arbitral Tribunal, the Tribunal may direct the other party or parties to effect a substitute payment to allow the arbitration to proceed (subject to any award on costs). In such circumstances, the party paying the substitute payment shall be entitled to recover that amount as a debt immediately due from the defaulting party.

(g) Failure by the Claimant or the Respondent to provide promptly and in full the required deposit may be treated by the Arbitral Tribunal as a withdrawal of the claim or counterclaim respectively.

(h) The unused balance held on deposit at the end of the arbitration shall be returned to one or both Parties as directed by the Tribunal.

14. **Procedure**

(a) Subject to any provisions contained in the legislation in force at the seat of the arbitration, the procedural rules applicable to this arbitration shall be those contained in the UNCITRAL Arbitration Rules (except as excluded,

supplemented or varied by agreement of the Parties), the relevant provisions (if any) of the Treaty and/or such specific orders or instructions as the Tribunal may from time to time establish).

(b) The Tribunal shall not be bound by any strict rules of evidence. However, as appropriate, the Tribunal may have regard to the 1999 IBA Rules on the Taking of Evidence in International Commercial Arbitration.

(c) The Tribunal and the Parties agree that the Presiding Arbitrator may make procedural rulings alone provided that:

  (i) all correspondence is copied to the co-arbitrators;

  (ii) the Presiding Arbitrator shall be free to consult, in his discretion, with the other arbitrators or to refer significant or difficult matters to the full Tribunal for decisions; and

  (iii) the full Tribunal shall hear and determine any procedural matter if requested by either Party.

15. **Confidentiality**

(a) The arbitral proceedings, including all pleadings, documents and testamentary evidence, and the deliberations of the Tribunal and any rulings or award shall be kept confidential by the Parties and members of the Tribunal except:

  (i) as necessary for enforcement or recognition of the award;

  (ii) with the consent of all parties; or

  (iii) as required by law or as necessary to protect legitimate interests of a Party or an Arbitrator.

(b) For the avoidance of doubt, it is agreed that in preparing and presenting its case no Party shall be precluded from communicating with its own prospective witnesses, experts or other sources of information or materials.

16. **Communications**

(a) After signature of these Terms of Appointment neither the Parties nor their representatives may engage in any oral or written communications with any member of the Tribunal *ex parte* in connection with the subject matter of the arbitration. Provided however, that the parties may communicate directly with the Presiding Arbitrator on procedural or administrative matters. If a party does so communicate with the Presiding Arbitrator, a copy of such communication must be given to the other party.

(b) Written pleadings, submissions, written evidence and other formal documents which are the subject of any procedural order shall normally be delivered to all members of the Tribunal by courier and, within three (3) business days following delivery by courier, by CD-ROM. Correspondence between the Parties and the Tribunal shall normally be sent by electronic mail, without any need for confirmation copies by ordinary mail.

(c) The Parties shall send copies of correspondence between them to the Tribunal only if it pertains to a matter in which the Tribunal is required to take some action, or be apprised of some relevant event.

17. **Signature**

This document may be signed in counterpart. The person signing it on behalf of a party warrants that he is authorised so to act. This document shall come into force on the date when it shall have been signed by the parties and the members of the arbitral Tribunal

Signed:

_____          _____
Claimant                                  Respondent

Place and date of signature :             Place and date of signature

FRANKFURT  10  AUGUST 2006
_____          _____


_____          _____
Co-Arbitrator                             Co-Arbitrator

Place and date of signature :             Place and date of signature

_____          _____

*Terms of Reference and Terms of Appointment of Arbitral Tribunal*                [8]

_____
Presiding Arbitrator

Place and date of signature :

_____