UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                                               :
In the Matter of the Arbitration Between:                      :
                                                               :
WERNER SCHNEIDER, acting in his capacity                       :
as insolvency administrator of WALTER BAU AG                   :
(IN LIQUIDATION)                                               :          1:10-cv-2729-RJH
                                                               :
                            Petitioner,                        :
                                                               :
            v.                                                 :
                                                               :
THE KINGDOM OF THAILAND                                        :
                                                               :
                            Respondent.                        :
                                                               :
---------------------------------------------------------------X


**THAILAND'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF ITS CROSS-MOTION TO DISMISS
PETITION FOR CONFIRMATION OF A FOREIGN ARBITRAL AWARD**




Claudia T. Salomon
David S. Wenger
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020-1104

*Counsel for The Kingdom of Thailand*

## TABLE OF CONTENTS

**Page**

Preliminary Statement ...........................................................................................................1

Argument.................................................................................................................................2

I.    The Court Should Review *De Novo* The Arbitrators' Decision On Arbitrability. .............2

II.    The Court Should Not Confirm The Award Because WB's Investment Did Not Receive The Government Approval Required For Treaty Protection. ...............................4

    A.    Part 1(b) Of The Protocol To Article 1 Of The 1961 Treaty Requires A CA...........................................................................................................................4

    B.    Thailand's Approvals Of The Tollway Project Did Not Extend Treaty Protection To WB's Investment In The Project ......................................................5

    C.    Before 2003, An Investment That Did Not Obtain A CA Was Not Protected. ..................................................................................................................7

    D.    Thailand's Issuance Of CAs In Respect Of Other Investments, But Not WB's, Further Proves That A CA Was Required For Treaty Protection. ..............8

    E.    The Misunderstanding Of German Government-Appointed Companies Regarding Thailand's Approval Requirements Is Irrelevant..................................8

III.    The Court Should Dismiss This Case On *Forum Non Conveniens* Grounds....................9

Conclusion...............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Consol. Rail Corp. v. Metro. Transp. Auth.*
1996 WL 137587 (S.D.N.Y. 1994) .......................................................................................3

*Dole Food Co. v. Patrickson*
538 U.S. 468 (2003) .........................................................................................................10

*First Nat'l. City Bank v. Banco Para El Comercio Exterior de Cuba*
462 U.S. 611 (1983) ...........................................................................................................9

*First Options of Chicago, Inc. v. Kaplan*
514 U.S. 938 (1995) ........................................................................................................1, 3

*Melton v. Oy Nautor Ab*
1998 WL 613798 (9th Cir. 1998) ......................................................................................10

*Monagasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*
311 F. 3d 488 (2d Cir. 2002) ............................................................................................10

*Sarhank Group v. Oracle Corporation*
404 F.3d 657 (2d Cir. 2005) ...........................................................................................2, 4

*Shaw Group v. Triplefine Int'l*
322 F.3d 115 (2d Cir. 2003) ...............................................................................................4

*Telenor Mobile Communs. v. Storm LLC*
524 F. Supp. 2d 332 (S.D.N.Y. 2007) .............................................................................3, 4

*Wright v. Universal Mar. Serv. Corp.*
525 U.S. 70 (1970) ..............................................................................................................5

*Yugoexport, Inc. v. Thai Airways Int'l Ltd.*
749 F.2d 1373 (9th Cir. 1984) ............................................................................................9

STATUTE

28 U.S.C. § 1610 .................................................................................................................9

Respondent The Kingdom of the Thailand ("Thailand") respectfully submits this Reply Memorandum in further support of its cross-motion to dismiss the Petition of Werner Schneider as insolvency administrator of Walter Bau AG ("WB"), seeking confirmation of a foreign arbitral award dated July 1, 2009 in favor of WB against Thailand (the "Award").

## Preliminary Statement

WB concedes that it does not have the right to bring an international arbitration claim against Thailand under the 2002 bilateral investment treaty between Thailand and Germany (the "2002 Treaty") unless Thailand previously approved WB's "investment" in accordance with the requirements of the 1961 bilateral investment treaty between Thailand and Germany (the "1961 Treaty"). WB instead argues that the various licenses, permits, and other approvals that the Tollway project received should be deemed sufficient for acquiring the extraordinary protections afforded investors with approved investments under the 2002 Treaty, including the right to bring an arbitration claim against Thailand. WB is mistaken.

To obtain the protections of the 2002 Treaty, WB was required to obtain a Certificate of Admission ("CA"), but WB never obtained that CA. As a result, WB never acquired the protections under the 2002 Treaty accorded investors in Thailand with approved investments, and Thailand never agreed to arbitrate with WB.

The threshold "arbitrability" question presented in this case is whether an arbitration agreement *existed at all* between Thailand and WB. That question does *not* concern the "*scope*" of an arbitration agreement between the parties, *i.e.*, whether an arbitration agreement between Thailand and WB covers WB's claims, as WB erroneously asserts.

Because there is no "clear and unmistakable evidence" (*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)) that Thailand and WB expressly agreed that the arbitrators would have the exclusive power to decide that threshold arbitrability question, this Court must

1

review the arbitrators' determination whether Thailand and WB are bound by an arbitration agreement *de novo*. The "[C]ourt should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely independently." *Sarhank Group v. Oracle Corporation*, 404 F.3d 657, 661 (2d Cir. 2005) (*quoting First Options*, 514 U.S. at 943).

The evidence presented by the parties, viewed in light of the controlling federal standards governing whether an arbitration agreement exists, demonstrates that WB has not carried *its* burden to prove, by a preponderance of the evidence, that its claims were arbitrable under the 2002 Treaty (and the incorporated provisions of the 1961 Treaty). Instead, the evidence shows that the dispute was "not contemplated by or not falling within the terms of the submission to arbitration"—in this case, the 2002 Treaty. *See* New York Convention, Article V(1)(c). Accordingly, this Court cannot confirm the Award but must instead dismiss the Petition.

Alternatively, this Court should dismiss the Petition on *forum non conveniens* grounds. WB's choice of forum is entitled to no deference. Thailand has no assets in the United States subject to execution. This Court should not decide the Petition when any judgment that might be entered confirming the Award could not be enforced in the United States.

## Argument

### I.      The Court Should Review *De Novo* The Arbitrators' Decision On Arbitrability.

The arbitrators erred in arbitrating WB's claims against Thailand on the grounds that the 2002 Treaty protected WB's investment and thereby gave it the right to arbitrate with Thailand. WB's investment never obtained the approval required by the 2002 Treaty. Thus, WB never acquired the right to arbitrate with Thailand. In short, WB's claims were never arbitrable.

WB erroneously contends that the arbitrability question presented concerns only the "scope" of the arbitration agreement in the 2002 Treaty—and that this Court should apply a "strong presumption of arbitrability" and defer to the arbitrators' jurisdictional decision. *See*

2

WB's Opposition Brief ("Opp.") at 8-9. A question of scope, however, arises only when parties "do not disagree that they have an agreement to arbitrate, [rather] they disagree about whether they intended the issue at hand to fall under that agreement." *Consol. Rail Corp. v. Metro. Transp. Auth.*, 1996 WL 137587, at *5 (S.D.N.Y. 1994). That is not this case. Instead, an arbitration agreement between Thailand and WB was never *formed* because WB never obtained the *sine qua non* of the alleged arbitration agreement—Thailand's approval of WB's "investment," as required by the 1961 Treaty and hence the 2002 Treaty. Thus, the threshold question concerns the existence of an arbitration agreement, *i.e.*, did Thailand ever agree to arbitrate with WB.

*De novo* review is required because there is no "clear and unmistakable evidence" (*First Options*, 514 U.S. at 944) that Thailand and WB agreed that the arbitrators would decide whether the parties had ever formed an agreement to arbitrate. Nothing in the 2002 Treaty speaks to this issue. Thailand never agreed that only the arbitrators and not a Court would be empowered to decide the threshold question of whether or not an arbitration agreement existed. That the parties agreed in the "Terms of Reference to Arbitration" that the arbitration would be governed by the UNCITRAL Arbitration Rules also shows that the parties did not vest the arbitrators with exclusive power to decide the threshold question of arbitrability. *See, e.g., Telenor Mobile Communs. v. Storm LLC*, 524 F. Supp. 2d 332, 351 (S.D.N.Y. 2007) (the UNCITRAL Rules do not provide "'clear and unmistakable evidence' that the parties intended for the arbitrators to have sole jurisdiction over the arbitrability of the dispute"). Not least, the "clear and unmistakable evidence" standard is difficult to meet. If there is "any doubt" as to whether the parties agreed that arbitrators would have the exclusive power to decide arbitrability, there is a "presumption to favor judicial rather than arbitral resolution." *See Shaw Group v. Triplefine Int'l*, 322 F.3d 115, 120-121 (2d Cir. 2003), *citing First Options*, 514 U.S. at 944-45.

3

Thus, because there is no "clear and unmistakable evidence" that the parties agreed to submit the issue of arbitrability only to arbitrators and not to a Court, this Court must review the evidence presented to the arbitrators on the arbitrability question *de novo*. *See Sarhank*, 404 F.3d 657, 662 (2d Cir. 2005) (arbitrators' determination of arbitrability not binding on district court); *Telenor*, 524 F. Supp. 2d at 351-52 (comparing standard of review to "any other broad-based appellate review"); *see also* cases cited in Thailand's August 17, 2010 Mem. at 11-12.   That evidence is found at Wenger Decl. Exs. 4 and 5 (the parties' August 10, 2007 post-hearing submissions to the arbitrators on the threshold question of the arbitrators' jurisdiction).

In reviewing that evidence *de novo*, the Court should apply United States law to determine whether Thailand agreed to arbitrate with WB under the 2002 Treaty and the incorporated provisions of the 1961 Treaty. *See Sarhank*, 404 F.3d at 662 (U.S. federal law governs the question of arbitrability in a New York Convention action to confirm a foreign arbitral award).   After reviewing that evidence *de novo*, the Court should conclude that WB has failed to carry its burden to prove, on the preponderance-of-the-evidence standard, that its claims were arbitrable.   Accordingly, under Article V(1)(c) of the New York Convention, the Court should refuse to confirm the Award, and dismiss the action.

II.     **The Court Should Not Confirm The Award Because WB's Investment Did Not Receive The Government Approval Required For Treaty Protection.**

A.     **Part 1(b) Of The Protocol To Article 1 Of The 1961 Treaty Requires A CA.**

To obtain Treaty protection and thus the right to bring an arbitration claim against Thailand, Part 1(b) of the Protocol to Article 1 of the 1961 Treaty expressly requires that an investment be "classified in the [CA] by the appropriate authority of the Kingdom of Thailand in accordance with its legislation and administrative practice as an 'approved project.'" (Wenger Decl. Ex. 2, 1961 Treaty at 4-5.)

4

WB contends that because Part 1(a) refers only to the issuance of a "permit," Part 1(b) cannot require a CA as a condition of Treaty protection. (Opp. at 16-17.) But Part 1(b) cannot be ignored. The Protocol is an "integral part" of the Treaty. (Wenger Decl. Ex. 2, introduction to Protocol to 1961 Treaty at 4.) Every clause of a Treaty must be given effect if it is all possible to do so. *See Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 81 (1970).

The "permit" mentioned by Part 1(a) does not displace Part 1(b)'s requirement of a CA. Part 1(a) and Part 1(b) are markedly different. Part 1(a) applies to "Each Contracting Party" (Germany and Thailand); Part 1(b) applies, in contrast, *only to Thailand*, giving Thailand greater control over those particular investments that are granted treaty protection by specifically requiring a CA. (*See* Wenger Decl. Ex. 4, Thailand's Post-Hearing Submission at ¶ 20.)

WB's reliance on the Thai and German language text of Parts 1(a) and 1(b) is misplaced. (Opp. at 17.) The 1961 Treaty states that "[i]n case of a divergent interpretation the English text shall prevail." (*See* Wenger Decl. Ex. 2, 1961 Treaty at 4 (Art. 14); *see also* Wenger Decl. Ex. 4, Claimant's Post-Hearing Submission at ¶ 21.) It is thus irrelevant that the German or Thai language words for "permit" and "certificate of admission" may be similar. In English, Parts 1(a) and Part 1(b), as Thailand intended, use different words – "permit" and "certificate of admission," respectively, and Part 1(b) unequivocally requires a CA.[1]

## B.   Thailand's Approvals Of The Tollway Project Did Not Extend Treaty Protection To WB's Investment In The Project.

There is no dispute that the Tollway project obtained various licenses, permits and approvals required to proceed with the project itself and that it obtained certain tax-exempt status

---

[1]      WB's reliance on Article 9 of the 1961 Treaty is also misplaced. (Opp. at 17.) The provision of Article 9 of the 1961 Treaty that "[t]he present Treaty shall also apply to approved investments made prior to its entry into force" (Wenger Decl. Ex. 2, 1961 Treaty at 3) is irrelevant because it is undisputed that WB's investment post-dated by many years the effective date of the Treaty in 1965.

other specific benefits from the Thailand's Board of Investment ("BOI").[2] These various other approvals upon which WB relies, however, do not afford Treaty protection. To obtain Treaty protection, WB was required to obtain from the Ministry of Foreign Affairs a CA.

Professor Sompong Sucharitkul's argument, upon which WB relies, that it is "inconceivable" that an infrastructure project with multiple government approvals should not benefit from Treaty protection simply because WB did not obtain a CA, is itself misconceived. (Opp. at 14-15; Wenger Decl. Ex. 1, Juris. Award ¶¶ 4.11, 4.43). If WB had obtained a CA from the Ministry of Foreign Affairs, WB would not automatically have obtained the benefits of BOI approval or the other approvals, licenses and permits needed for the project to proceed. It is thus faulty logic to assert that approvals other than a CA are sufficient for Treaty protection.

Under Professor Sucharitkul's reasoning, Cabinet approval authorizing the applicable government agencies to proceed with a project would supersede all other laws and regulations imposing obligations on an investor to obtain licenses, permits, and other approvals. This cannot be (and is not) the case. Cabinet approval for the Tollway project demonstrates only that the Thai government authorized the project to proceed; it did not grant Treaty protection to WB.

Other than relying on "common sense"—which is not a 1961 Treaty or 2002 Treaty standard—the arbitrators failed to explain why approvals of the Tollway *concession* for purposes unrelated to Treaty protection overcome *the lack of a CA* granted by the Ministry of Foreign Affairs—as Part 1(b) of the Protocol to Article 1 of the 1961 Treaty expressly requires. (*See*

---

[2]     The BOI, established by Thailand's Investment Promotion Act of 1977 (the "Act") (annexed as Ex. 1), is authorized to issue to foreign investors a Certificate of Promotion which confers on certain investments limited benefits such as tax exemptions (sections 31-32), import duty exemptions (sections 28-30), immigration-related rights (sections 24-26), and property-ownership rights (section 27). *See* Chapter 3 at 8. The Act does not mention Treaty protection. That WB obtained a BOI certificate, as many other foreign investors in Thailand have done, is irrelevant to WB's claim to Treaty protection.   Nothing in the Act authorizes the BOI to accord an investment Treaty protection.

Wenger Decl. Ex. 1, Juris. Award ¶ 4.43; Wenger Decl. Ex. 2, 1961 Treaty at 4.)  Thailand is

entitled to an as-written interpretation and an as-written application of the 1961 Treaty.[3]

### C. Before 2003, An Investment That Did Not Obtain A CA Was Not Protected.

Part 1(b) of the Protocol expressly requires that WB obtain a CA for Treaty protection.

Nothing in the 1972 and 2002 discussions by Thailand's CA committees or Thailand's 2003

announcement regarding treatment of foreign investment changes that requirement.

In 1972, when Schering Chemicals applied for a CA, Thailand's Ministry of Foreign

Affairs established an *ad hoc* committee consisting of 12 representatives from eight govern-

mental bodies to review Schering's CA application.  (*See* Wenger Decl. Ex. 5, Claimant's Post-

Hearing Submission at ¶ 17.1.)  The committee's October 19, 1972 discussion led, just eight

days later, to Schering receiving a CA which stated that its investment was an "'approved

project,' as defined in paragraph (1)(b) of the Protocol." (*See* Wenger Decl. Ex. 8, pg. 1.)

Then, in 1991, the Thai Cabinet, acting on a proposal from the Ministry of Foreign

Affairs, established a permanent CA Committee with a mandate to "take into consideration the

approval of CA[s]." (See Wenger Decl. Ex. 1, Juris. Award at ¶ 3.26.)  That Thailand estab-

lished that CA Committee demonstrates that a CA was required.  Moreover, minutes of the

Committee's August 28, 2002 meeting regarding Thailand's treatment of foreign investments

demonstrates that the BOI had no authority to issue approvals for Treaty protection.  The BOI

representative at the meeting stated that consultation was needed with high-level BOI officials to

discuss whether its role should be expanded to include approvals for Treaty purposes.  (*See*

Wenger Decl. Ex. 4, Claimant's Post-Hearing Submission at ¶ 64; Behrman Decl. Ex. 6 at 3.)

---

[3]      *Desert Line Projects LLC v. Republic of Yemen*, ICSID Case No. ARB/05/17 (Award of Feb. 6, 2008) is
not relevant.  (Opp. at 15.)  BIT arbitrations involve myriad different facts, treaty clauses, local laws, and
government structures. Here, WB's failure to obtain the CA required by the 1961 Treaty is dispositive.

Lastly, Thailand's 2003 announcement undermines, rather than supports, WB's argument. (Opp. at 19-20.) As WB concedes, in 2003, the Thai government announced its "*future policy for the issuance certificates of approval under treaties,*" in which investments that received a BOI certificate would be entitled to Treaty protection. (Opp. at 19-20) (emphasis added). There can be no dispute that an announcement of a *future* policy announces a change from the existing policy, *i.e.*, before the announcement, BOI approval was not sufficient to obtain Treaty protection. The 2003 Announcement is necessarily forward-looking, not merely a statement of past practice. (*See* Wenger Decl. Ex. 1, Juris. Award ¶ 3.34-3.35.)

## D.   Thailand's Issuance Of CAs In Respect Of Other Investments, But Not WB's, Further Proves That A CA Was Required For Treaty Protection.

WB's argument that Thailand's issuance of eight (8) CAs before 2003 proves that no such certificate was necessary is nonsensical. (Opp. at 20-21.) The fact that Thailand issued eight CAs before 2003—when Thailand started to equate BOI approval with CA approval—*proves* that a CA was in fact required before 2003. Otherwise, those investors would not have had any reason to seek a CA. Those eight  investors that obtained the CAs took the steps necessary to obtain Treaty protection. (*See* Wenger Decl. Ex. 8.)  Had WB wanted its investment to be similarly protected, it too could have applied for a CA. It did not. The small number of CAs issued, compared to the total volume of investment, does not prove that a CA was unnecessary to obtain Treaty protection, as WB suggests. (Opp. at 20-21.) It proves only that those investors, like WB, which did not obtain a CA, did not to take the necessary steps to gain Treaty protection.

## E.   The Misunderstanding Of German Government-Appointed Companies Regarding Thailand's Approval Requirements Is Irrelevant.

The erroneous views of Treuarbeit and DEG (purportedly instructed by the German government to assist investors) cannot be evidence of Thailand's requirements for a German

company to obtain Treaty protection, as WB suggests. (Opp. at 21.)   Treuarbeit and DEG act on behalf of Germany, not Thailand.  Their misunderstandings about the 2002 Treaty cannot abrogate Thailand's requirement that a CA be approved as a condition of Treaty protection.

### III.    The Court Should Dismiss This Case On *Forum Non Conveniens* Grounds.

*Forum non conveniens* is another reason the Court should not confirm the Award. Representatives of Thailand's Office of the Attorney General have submitted a declaration ("Thailand OAG Decl.") explaining that Thailand does not have any assets in the United States used for commercial activity.   A judgment confirming the Award would, therefore, be unenforceable in the United States. *See* 28 U.S.C. § 1610(a). That WB can bring proceedings in "many jurisdictions" to attempt to collect on the Award, *see* Opp. at 22-23, does not make a federal court in New York a proper forum to confirm the Award.  WB could seek to confirm the Award in a jurisdiction where Thailand has property and where a judgment, if granted, might be enforceable. Given Thailand's lack of assets here, this Court is an improper forum.

Nothing that WB could learn through post-judgment discovery would enable it to execute on Thai Airways' assets for a judgment issued against Thailand.  Thailand has an indirect, partial ownership interest in otherwise publicly-held Thai Airways. *See* Thailand OAG Decl. at 3-4. Even an instrumentality of a foreign government (unlike publicly-owned Thai Airways) is independent for purposes of executing a judgment. *See First Nat'l. City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 629-633 (1983); *see also Yugoexport, Inc. v. Thai Airways Int'l Ltd.,* 749 F.2d 1373, 1374-75 (9th Cir. 1984) (Thai Airway assets were immune from execution on a judgment against the Port Authority of Thailand).  The Foreign Sovereign Immunities Act did not change principles of corporate independence. "A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the

9

assets of the subsidiary . . . . The fact that the shareholder is a foreign state does not change the analysis." *Dole Food Co. v. Patrickson,* 538 U.S. 468, 475 (2003).

The Second Circuit in *Monagasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine,* 311 F.3d 488 (2d Cir. 2002) confirmed the validity of the *forum non conveniens* defense in the context of a petition to confirm an award under the New York Convention. *See id.* at 500 ("The case "simply has no connection with the United States other than the fact that the United States is a Convention signatory"); *see also Melton v. Oy Nautor Ab,* 1998 WL 613798 (9th Cir. 1998).

The factors taken into account in a *forum non conveniens* analysis compel dismissal. The first *forum non conveniens* inquiry, the degree of deference owed to WB's choice of forum, favors dismissal. WB and Thailand are foreign parties with a wholly foreign dispute. As in *Monagasque,* the only connection to the United States is the New York Convention. Thailand is an adequate alternative forum, satisfying the second *forum non conveniens* inquiry. The only relevant private and public interest factors, the "enforceability of judgments" and the "local interest in resolving local disputes," also support dismissal. There is no "local interest" in a judgment that cannot be enforced in the United States. Ample precedent suggests that this Court should not serve as a clearing house to confirm the Award and issue a judgment that will not be enforceable here. (*See* Mem. at 23, citing dismissals on *forum non conveniens* grounds where defendants lacked executable assets in the United States.)

## Conclusion

The Petition to confirm the Award should be dismissed.

Respectfully submitted,

Dated: New York, New York
      November 1, 2010

/s/ Claudia T. Salomon
Claudia T. Salomon
David S. Wenger
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020-1104
(212) 335-4702
claudia.salomon@dlapiper.com
david.wenger@dlapiper.com

*Counsel for The Kingdom of Thailand*

11

## CERTIFICATE OF SERVICE

I, David S. Wenger, hereby certify that on this 1st day of November 2010, I caused an electronic copy of the foregoing Reply to be served via the Court's ECF system to counsel for Petitioner.

/s/David S. Wenger
David S. Wenger
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020-1104
(212) 335-4500
david.wenger@dlapiper.com

*Counsel for The Kingdom of Thailand*