**MANDATE**

N.Y.S.D. Case #
10-cv-2729(DAB)

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 8th day of August, two thousand twelve.

Before:  BARRINGTON D. PARKER,
PETER W. HALL,
J. CLIFFORD WALLACE,*
*Circuit Judges.*

_____

WERNER SCHNEIDER,
acting in his capacity as insolvency administrator of
Walter Bau AG (In Liquidation),

    Petitioner-Appellee,

    v.

THE KINGDOM OF THAILAND,

    Respondent-Appellant.

_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 06, 2012

JUDGMENT
Docket No.: 11-1458

The appeal in the above captioned case from a judgment of the United States District Court for the Southern District of New York was argued on the district court's record and the parties' briefs. Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the judgment of the District Court is AFFIRMED in accordance with the opinion of this court.

For The Court:

Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

_____
    * Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

MANDATE ISSUED ON 09/06/2012

11-1458-cv
*Schneider v. The Kingdom of Thailand*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2011
(Argued: May 22, 2012; Decided: August 8, 2012)
Docket No. 11-1458-cv

_____

WERNER SCHNEIDER, acting in his capacity as insolvency administrator of
Walter Bau AG (In Liquidation),

*Petitioner-Appellee*,

-*v.*-

THE KINGDOM OF THAILAND,

*Respondent-Appellant*.

_____

BEFORE: PARKER, HALL, and WALLACE[*], *Circuit Judges*.

_____

The Kingdom of Thailand appeals from a judgment of the United States

District Court for the Southern District of New York (Batts, *J*.) confirming an

arbitration award in favor of appellee Schneider, the insolvency administrator of

---

[*] Judge J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1

Walter Bau AG. We conclude that the district court, before performing a deferential review of the arbitration award, should have determined whether there was clear and unmistakable evidence that the parties agreed that the scope of the arbitration agreement would be decided by the arbitrators. Nevertheless, we conclude that such clear and unmistakable evidence exists in the record. AFFIRMED.

_____

> STANLEY MCDERMOTT III (Claudia T. Salomon, David S. Wenger, *on the brief*) DLA Piper LLP (US), New York, New York, *for Respondent-Appellant*.
>
> ANDREW M. BEHRMAN (Joseph P. Cyr, *on the brief*), Hogan Lovells US, LLP, New York, New York, *for Petitioner-Appellee*.

_____

WALLACE, Circuit Judge:

Schneider, as the insolvency administrator of the German company Walter Bau AG (Walter Bau), successfully petitioned the district court to confirm an arbitration award against the Kingdom of Thailand. Thailand appeals, contending that the district court should have independently adjudicated the arbitral tribunal's jurisdiction instead of performing only a deferential review of the tribunal's decision. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

**I.**

2

In 2002, Germany and Thailand signed the Treaty between the Kingdom of Thailand and the Federal Republic of Germany concerning the Encouragement and Reciprocal Protection of Investments (2002 Treaty). This bilateral investment treaty provides that disputes concerning investments between a Contracting Party (*i.e.*, Germany and Thailand) and an investor of the other Contracting Party may be resolved by arbitration at the request of either party. 2002 Treaty art. 10, para. 2. The 2002 Treaty applies to "approved investments made prior to [the Treaty's] entry into force by investors of either Contracting Party in the territory of the other Contracting Party consistent with the latter's laws and regulations." *Id.* art. 8.

In 2005, Walter Bau initiated arbitration against Thailand. Walter Bau claimed that Thailand had unlawfully interfered with investments made by its predecessor in interest between 1989 and 1997 in a tollway project in Thailand. A three-member arbitration tribunal was convened in accordance with the agreed Terms of Reference, signed by representatives of both Walter Bau and Thailand. The Terms of Reference empowered the tribunal to "consider . . . objections to jurisdiction" and provided that the United Nations Commission on International Trade Law (UNCITRAL) Arbitration Rules were to be the applicable procedural rules.

Thailand objected to the tribunal's jurisdiction on the ground that Walter Bau's investments were not "approved investments" that enabled arbitration because Walter Bau never obtained a "Certificate of Admission" from Thailand's Ministry of Foreign Affairs. Walter Bau responded that the tollway project was comprised of "approved investments" because Walter Bau was invited to make the investments by the Thai Council of Ministers, which approved the project at various stages, and because the Thai Board of Investment issued two certificates of investment for the project. The arbitration tribunal reviewed the parties' written submissions, conducted a two-day hearing including expert testimony from both parties, and issued a 43-page opinion unanimously concluding that it had jurisdiction because the dispute concerned "approved investments" within the meaning of Article 8 of the 2002 Treaty.

In 2009, the tribunal held an 11-day hearing on the merits of Walter Bau's claim. The tribunal then awarded Walter Bau over 30 million euros in damages, costs, and expenses.

In 2010, Walter Bau petitioned to confirm the arbitration award in the district court under 9 U.S.C. § 201 *et seq.*, which implements the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York Convention). Thailand cross-moved to dismiss Walter Bau's petition under 9

U.S.C. § 207, arguing that the tribunal lacked jurisdiction to render the award because Walter Bau did not make an "approved investment." Thailand also moved to dismiss on the ground of *forum non conveniens*. Thailand does not, however, appeal the district court's rejection of its *forum non conveniens* defense.

The district court concluded that it did not need to conduct a *de novo* review of the arbitration award because the issue of whether the tollway project involved "approved investments" was an issue of arbitration agreement scope and did not "concern a question of agreement formation." The district court then performed a deferential review of the tribunal's jurisdictional determination and held that the arbitration award met the "light burden imposed by Section 10(a) [of the Federal Arbitration Act] and the 'Manifest Disregard Standard.'" The district court then entered judgment confirming the arbitration award.

We review *de novo* whether the district court was required to make an independent determination of the arbitrability of the tollway dispute. *Contec Corp. v. Remote Solution, Co. Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005).

**II.**

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'"

5

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). Thus, a party resisting confirmation of an arbitration award is entitled to an independent court review of a question of arbitrability unless there is clear and unmistakable evidence that the parties agreed to arbitrate that question. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 947 (1995). "'Question[] of arbitrability' is a term of art covering 'dispute[s] about whether the parties are bound by a given arbitration clause' [*i.e.*, formation] as well as 'disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy' [*i.e.*, scope]." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011) (quoting *Howsam*, 537 U.S. at 84).

Schneider contends that, because the question of whether the tollway project involved "approved investments" does not relate to whether an arbitration agreement was *formed*, but instead concerns the *scope* of the agreement, the district court correctly performed a deferential review of that question without first determining whether there was clear and unmistakable evidence of the parties' intent to submit the question to the arbitral tribunal. Schneider is correct that the question whether the tollway project involved "approved investments" concerns the scope of an arbitration agreement rather than its formation. The existence of an

6

arbitration agreement between Walter Bau and Thailand is beyond dispute. Thailand, "by signing the [2002 Treaty], and [Walter Bau], by consenting to arbitration, have created a separate binding agreement to arbitrate." *Republic of Ecuador*, 638 F.3d at 392. Whether the tollway project involved "approved investments" involves the scope of that separate arbitration agreement, the terms of which are defined by the 2002 Treaty and the Terms of Reference.

However, whether the district court properly declined to determine independently whether the tollway project involved "approved investments" does not turn on whether that question was one of scope or formation. It turns on whether there was clear and unmistakable evidence of the parties' intent to commit that question to arbitration. For in the absence of such clear and unmistakable evidence, questions of arbitrability are presumptively resolved by the court, regardless of whether they are related to scope or formation. *See id.* at 393; *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 130 S. Ct. 2847, 2856 (2010) (where there is no valid provision committing the issue to arbitration, "the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce"). It is true that, in the absence of such clear and unmistakable evidence, a court discharges its duty independently to resolve scope-related questions of arbitrability by applying the

"presumption of arbitrability." *See Granite Rock*, 130 S. Ct. at 2858–59. But the district court here never inquired into whether such clear and unmistakable evidence existed. Instead, it conflated the concepts of (1) deferentially reviewing arbitrators' resolution of questions of arbitrability when there is clear and unmistakable evidence that the parties intended to commit such questions to arbitration; and (2) discharging the duty independently to review scope-related questions of arbitrability by applying the presumption of arbitrability in the absence of such evidence. The district court should not have refused to determine independently whether the tollway project involved "approved investments" without first finding clear and unmistakable evidence of the parties' intent to submit that question to arbitration.

### III.

But rejecting Schneider's argument does not result in a victory for Thailand. We have "the power to decide cases on appeal if the facts in the record adequately support the proper result." *Stetson v. Howard D. Wolf & Assocs.*, 955 F.2d 847, 850 (2d Cir. 1992). The district court should have inquired into whether the parties intended to arbitrate arbitrability. But if it had done so, the district court would have discovered clear and unmistakable evidence that the parties did so intend.

8

Case 1:05-cv-02729-DAB  Document 79  Filed 09/06/12  Page 10 of 13

Where "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec*, 398 F.3d at 208. That is precisely what occurred here. Thus, Thailand is not entitled to independent court adjudication of whether the tollway project involved "approved investments."

Walter Bau and Thailand agreed in the Terms of Reference to use the UNCITRAL Arbitration Rules as the rules of procedure. Article 21 of those rules provides:

> The arbitral tribunal shall have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the arbitration clause or of the separate arbitration agreement.

UNCITRAL Arbitration Rules art. 21, para. 1 (recommended by the U.N. General Assembly for use in settlement of disputes arising in the context of international commercial relations, G.A. Res. 31/98, U.N. Doc. A/RES/31/98 (Dec. 15, 1976)).

In *Republic of Ecuador*, we held that a bilateral investment treaty's incorporation of the same UNCITRAL rules was clear and unmistakable evidence that the parties intended questions of arbitrability to be decided by the arbitral panel "in the first instance." 638 F.3d at 394. The instant appeal is no different. Walter Bau and Thailand's adoption of the UNCITRAL rules providing that the

tribunal has "the power to rule on objections that it has no jurisdiction" is clear and unmistakable evidence of their intent to arbitrate issues of arbitrability, including whether the tollway project involved "approved investments." *See id.*; *see also Contec*, 398 F.3d at 208 (incorporation of rule providing that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction" is clear and unmistakable evidence of the parties' intent to delegate issues of arbitrability to the arbitrator). Thailand argues that the parties' adoption of Section 4 of the Terms of Reference is evidence that the parties did not agree to arbitrate arbitrability. But Section 4 provides that "[t]he Tribunal may consider . . . objections to jurisdiction," which is entirely consistent with and parallel to the language in Article 21. Thus, considering both Section 4 of the agreed Terms of Reference and the incorporation of Article 21 of the UNCITRAL rules, we hold that Walter Bau and Thailand clearly and unmistakably agreed that the tribunal would consider matters affecting its jurisdiction in the first instance.

      Thailand argues that *Republic of Ecuador* does not resolve its appeal because our use of the phrase "in the first instance" limits the holding to cases presenting the same procedural stance of determining whether the district court properly refused to stay arbitration. According to Thailand, *Republic of Ecuador* merely confirmed the arbitrators' power to decide their jurisdiction at the outset of

10

the arbitration without delay, and did not hold that the agreement to the UNCITRAL rules precluded independent judicial review at the later confirmation stage. We do not read *Republic of Ecuador* to be so lifeless.

"Although the [New York] Convention recognizes that an award may not be enforced where predicated on a subject matter outside the arbitrator's jurisdiction, it does not sanction second-guessing the arbitrator's construction of the parties' agreement." *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 977 (2d Cir. 1974). Once the parties have agreed that an arbitrator may decide questions regarding the scope of arbitrable issues in the first instance, requiring the district court to decide such questions *de novo* would "frustrate[] the basic purpose of arbitration, which is to dispose of disputes quickly and avoid the expense and delay of extended court proceedings," and "would make an award the commencement, not the end, of litigation." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (internal quotation marks and citations omitted).

Our view is underscored by the facts of this appeal. Failing to give any deference to the tribunal's jurisdictional decision—delivered in a 43-page opinion which followed hundreds of pages of party submissions and a two-day hearing, and which served as the foundation for the 11-day hearing on the merits—would entail

11

an enormous waste of resources contrary to the purposes of the New York Convention. *See Parsons*, 508 F.2d at 977. Thus, under *Republic of Ecuador*, when parties incorporate UNCITRAL rules, they clearly and unmistakably intend to refer questions of arbitrability to the arbitrators "in the first instance." 638 F.3d at 394. This necessarily means that a district court considering whether to confirm the award must review the arbitrators' resolution of such questions with deference. Walter Bau and Thailand agreed to be governed by the UNCITRAL rules and to substantially similar language in Section 4 of the Terms of Reference. Therefore, they clearly and unmistakably committed questions of arbitrability to the arbitrators.

## IV.

Because Walter Bau and Thailand clearly and unmistakably agreed to arbitrate issues of arbitrability—including whether the tollway project involved "approved investments"—Thailand is not entitled to an independent judicial re-determination of that same question. *See First Options*, 514 U.S. at 943–44. This resolves the appeal before us. Although Thailand briefly argues that the district court should not have applied the manifest disregard standard embedded in 9 U.S.C. § 10(a)(4) because that standard does not apply to *foreign* arbitration awards, Thailand never suggests that the tribunal's jurisdictional decision would

12

flunk the deferential standard of review properly applied to foreign awards. *See Parsons*, 508 F.2d at 976–77 (reviewing award pursuant to New York Convention). We express no opinion on the precise standard for that review or whether the tribunal's jurisdictional decision would survive that review because those issues were not presented to us.

**AFFIRMED.**